LIZZIE M. PURINTON *vs.*. HUMPHREY PURINTON.

Kennebec.    Opinion March 19, 1906.

*Evidence.   Letters Read to Witness.   Admissions.   "Best Evidence Rule."*
*Exceptions will be Overruled, When.*

During the trial in a divorce proceeding a witness testified that he had carried numerous letters from the plaintiff after her marriage to the defendant, to one Frank Bartlett, and that the plaintiff had often read aloud to the witness the contents of letters written by Bartlett to her, and by her to him. No effort was made by the defendant to procure the original letters and no notice had been given the plaintiff to produce them. Against the objection of the plaintiff the witness was allowed to testify as to what was read or stated in the letters by the plaintiff.

*Held:* That the ruling of the presiding Justice admitting this testimony was correct. When one voluntarily and without solicitation reads the whole or a portion of a letter to another, the party hearing does not undertake to repeat the contents of the original writing but only what the person purporting to read or state, has said. In such a case such statements assume the form of an admission by the party holding the letter, and testimony of such evidence becomes primary evidence.

When it is sought to use a written statement as an admission the "best evidence rule" so called, does not apply.

A certain letter in the handwriting of said Bartlett and which appeared to be one of many written by him to the plaintiff, was found under a couch in the room from which the plaintiff moved when she left her husband. This letter was admitted in evidence against the plaintiff's objection. *Held,* that the ruling admitting this letter was correct, ·

Exceptions will be overruled unless they affirmatively show, without aid from extrinsic evidence, not only that the ruling was wrong, but that the · party complaining was aggrieved, so that if the ruling would be justified or would be harmless to the complainant upon any possible but not improbable situation unexplained by the exceptions, the doings below will not be disturbed or condemned.

On exceptions by plaintiff.    Overruled.

Libel for divorce heard by the Justice of the Superior Court, · Kennebec County, in vacation with the understanding and agreement that each party should have all the rights of exception as if the

case had been heard in term time. The charge in the libel was failure to support and cruel and abusive treatment. In his answer the defendant " denies every allegation laid in the libel of said Lizzie M. Purinton as cause for divorce and every specification offered therein under such allegations; and he also denies the allegation in the same libel that said Lizzie has been faithful to her marriage obligations ever since she became his wife and charges that on the contrary during the same time she has offered him extreme and continuous provocation, and that her conduct during the time aforesaid has been such as would have justified all that she charges or can truly allege against him, and that during the same time her conduct with relation to men other than her husband has been immodest, improper, scandalous, indecent and criminal."

A divorce was denied. During the hearing, the defendant offered certain testimony which was admitted against the plaintiff's objection, and thereupon the plaintiff excepted.

The pith of the case is stated in the opinion.

*S. S. Brown,* for plaintiff.

*Thompson & Wheeler,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

SPEAR, J. This case involves a libel for divorce and comes up on exceptions to the admission of certain testimony. The charges in the libel were failure to support and cruel and abusive treatment. The answer of the libellee was a denial of every allegation laid in the libel as a cause for divorce and every specification offered therein under the allegations; and also a denial of the allegation in the libel that the libellant had been faithful to her marriage obligations ever since she became his wife and charged that on the contrary during the same time she had offered him extreme and continuous provocation and that her conduct during this time had been such as would have justified all that she charged or could truly allege against him and that during the same time her conduct with relation to men other than her husband, had been immodest, improper, scandalous,

indecent and criminal.　Among the witnesses called by the defendant was one James Colby, who testified that soon after the marriage of the parties he carried numerous letters between this libellant and one Frank Bartlett for whom Mrs. Purinton had done housework before her marriage with the libellee, and that the libellant had often read aloud to the witness the contents of letters written by said Bartlett to her and by her to him, and the defendant's counsel asked the witness to give in testimony such portions of the letters so read or stated to him by the libellant as he could remember.　No effort had been made by the libellee to procure the letters and no notice had been given by the libellant to produce any such letters as she might have in her possession.　The libellant's counsel objected to such inquiry but the court allowed the witness to testify as to what was read or stated in them by the libellant.　This ruling presents the first ground of exception.

The libellant claims that the letters themselves, if any such letters ever existed, were the best evidence of the contents of the letters and that no secondary proof of their contents should be received, until it was shown that the libellee had made all reasonable effort to obtain the letters.　In other words, that the evidence offered to prove the contents of these letters or any part of them fell within the usual rule relating to the proof of the contents of written instruments.　But we hardly think this position is tenable.

The case shows and the libellee contends that this evidence was not offered to prove the contents of the letters but the statements or admissions of the libellant herself as to some of the statements contained in these letters.　Proof of her voluntary admissions against her own interest would clearly be admissible by the testimony of any competent witness who might have heard such admissions.　We are unable to see why the source of her admissions, whether made by her as voluntary statements of her own, purporting to be quotations from memory or to be read from some writing, should modify the general rule with respect to their proof.　When one voluntarily and without solicitation reads the whole or a portion of a letter or writing to another, the party hearing does not undertake to repeat

the contents of the original writing but only what the person, purporting to read or state, has said. This is entirely different from an attempt on the part of a witness, who, having read a letter himself, undertakes to testify to its contents when the letter of course is the best evidence. But when a party voluntarily assumes to state what is in a letter, or to read a portion of a letter, to another, then such statement assumes the form of an admission by the party holding the letter, and testimony of such admission becomes primary evidence under the general rule with reference to proof of admissions.

The testimony of Colby does not assume to give the legal effect of the letters but shows to the extent of his recollection what was said by the libellant to have been their terms and import.

The libellee's legal position is fortified by authority as well as reason. 16 Cyc. page 944, lays down this rule: "When it is sought to use a written statement as an admission the "best evidence rule" so called, does not apply; and a copy of a letter, for example, is competent when identified, without accounting for the original."

In *Kelly* v. *McKenna*, 18 Mich. 381, it was held that the copy of a letter which the writer of the original had admitted in its leading points to be a correct copy, was as to these points converted into admissions by him and became original evidence. The court said: "It was of no consequence that the paper was a copy of the letter he had written. When he made its contents identical with his declaration, the paper became an original for the purpose of showing his declaration to Bruce." So in the case at bar, the testimony of Colby became primary for the purpose of showing the declarations of the libellant which purported to be identical with the letters from which she was quoting.

In *Smith* v. *Palmer*, 6 Cushing, 513, the court say: "The admissions of a party stands on distinct grounds. The admissions of a party are not open to the same objection which belongs to parol evidence from other sources. A party's own statements and admissions are in all cases admissible in evidence against him, though such statements and admissions may involve what must necessarily be contained in some writing, deed or record. Thus, the statement of a party that certain lands had been conveyed might be admitted,

though the conveyance must be by deed or record. The general principle as to the production of written evidence, as the best evidence does not apply to the admissions of parties; as what a party admits against himself may reasonably be taken to be true."

In 1 Greenl. Ev. secs. 96 and 97, this rule is laid down : "It appears that the prevailing doctrine in England and this country is that a verbal admission of the contents of a writing by a party himself will supersede the necessity of giving notice to produce it ; in other words, that "said admissions being made against the party's own interest can be used as primary evidence of the contents of a writing against him." In note A of section 96, above cited, it is said that while the rule as stated is denied in Ireland and New York, it is " the prevalent opinion in the United States."

In *Blackington* v. *Rockland*, 66 Maine, 332, involving the proof of a notice to a town for injuries received upon a defective highway, in which the objection was raised that the records of the city were not competent evidence to show that a bill for damages had been presented without the production of the bill itself, our court held: " It has been decided that oral admissions of a party are admissible evidence of facts though the facts are established by some writing. The records here would in effect be equivalent to the oral admission of an individual party or more than that." In this opinion the court also adopts the English decision in *Slatterie* v. *Pooley*, 6 M. & W. 664, which is referred to by Greenl. in Note A, supra, as the leading English case on this point.

In *Loomis* v. *Wadhams*, 8 Drake, 557, the court adopts the following quotations from Mr. Justice Parke: " What a party says is evidence against himself as an admission, whether it relates to the contents of a written paper or to anything else.

In *Clarke* v. *Warwick Cycle Mfg. Co.*, 174 Mass. 434, Chief Justice Holmes says : " It is to be remembered with reference to this and other exceptions that admissions are evidence against a party making them although they relate to the contents of a written paper or to a corporate vote."

See also *Wolverton* v. *State*, 16 Ohio, 173 ; *Edgar* v. *Richardson*,

33 Ohio St. 581; *Edwards* v. *Tracy*, 62 Pa. St. 374; *Taylor* v. *Peck*, 21 Grapp. 11 (Pa.)

The second exception involves the admission of a letter written by Bartlett, found by the libellee behind a couch in a room vacated by the wife when she left her husband.

The exceptions do not show whether this letter was opened when found, or written before or after the marriage of the libellant with the libellee, nor upon what grounds the judge found in the affirmative upon both of these points.

But it is a well settled rule of law that in the trial of a case it is to be presumed that things were rightly and regularly done except so far as the exceptions make it otherwise appear.

Exceptions must be overruled unless they affirmatively show, without aid from extrinsic evidence, not only that the ruling was wrong, but that the party complaining was aggrieved, so that if the ruling would be justified or would be harmless to the complainant upon any possible but not improbable situation unexplained by the exceptions, the doings below will not be disturbed or condemned. Among the latest authorities upon this proposition are *Toole* v. *Bearce,* 91 Maine, 209; *Hill* v. *Reynolds,* 93 Maine, 25; *Smith* v. *Smith,* 93 Maine, 253; *Look* v. *Norton,* 94 Maine, 547; *Atkinson* v. *Orneville,* 96 Maine, 311; *Copeland* v. *Hewett,* 96 Maine, 525.

Under these principles of law it must be held that the letter was in all respects properly admitted except those specifically stated in the exceptions, and, therefore, must be assumed that the evidence satisfied the court that the letter was written after the marriage and either found open or without any envelope.

When this letter was offered, it had already appeared in the case by legitimate evidence that Mrs. Purinton had been carrying on a clandestine correspondence with Bartlett, employing a private carrier; that many letters had passed between them. Then the letter found by the libellee was offered as one of the letters contained in the correspondence in which Mrs. Purinton had been an active participant.

The exceptions do not deny the passage of these letters between the libellant and Bartlett except the last one, simply alleging that

"Mrs. Purinton denies all such pretended reading of said letters by her to said Colby and denies any such letters as the defendant exhibits." The libellee presented only the letter which is the subject of the second exception.

The only real question under this exception is whether under all the accompanying circumstances the finding of this letter will warrant the inference that it was received by the libellant notwithstanding her denial of having received it.

In view of the fact that the letter was in the handwriting of Bartlett and appeared to be one of many which was written to her by him, and was found under a couch in the room from which the libellant moved when she left her husband, the conclusion seems irresistible that she received the letter. How otherwise could such a letter, admitted to be in the handwriting of Bartlett, have found its way into her room? If the letter had been forged or not in the handwriting of Bartlett with whom the evidence tends to show she had sustained a course of improper correspondence, it could not be admitted; but there is no pretence that it was forged or that it was in a handwriting other than Bartlett's or that there was any collusion with Bartlett by which it was placed there, but a simple denial on her part that she ever received it. If that letter was not placed in that room through her hands we are at a complete loss to know how it got there. The only reasonable explanation is that she received it and accidentally dropped it behind the couch or on the floor, and in that way left it to be found by her husband.

*Exceptions overruled.*